Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHARD W.,

                     **Plaintiff,**

                **v.**

COMMISSIONER OF SOCIAL SECURITY,

                  **Defendant.**

Civil Action No.: 21-11080 (ES)

**OPINION**

SALAS, DISTRICT JUDGE

Plaintiff Richard W. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* (*See* D.E. No. 1). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.    BACKGROUND

In September 2018, Plaintiff filed applications for DIB and SSI alleging disability beginning on July 13, 2017. (D.E. No. 7, Administrative Record ("R.") at 278–304).[1] He claimed disability based on several impairments, including bipolar depression, obesity, hypertension, diabetes, and migraines. (*Id.* at 334). His applications were denied initially and on reconsideration. (*Id.* at 210–220 & 222–227). On February 19, 2020, an Administrative Law Judge ("ALJ") held

---

[1]    Plaintiff previously applied for DIB on May 30, 2014, which was denied after a hearing on July 17, 2017. (D.E. No. 10 ("Mov. Br.") at 1). His DIB and SSI applications that are the subject of this appeal allege disability beginning on July 13, 2017. (R. at 278–304). As such, the Court will only consider evidence after July 13, 2017.

a hearing, at which Plaintiff and a vocational expert testified.  (*Id.* at 49–74).

On March 10, 2020, the ALJ denied Plaintiff's applications for DIB and SSI.  (*Id.* at 19–47).  The ALJ held that Plaintiff is not disabled under the Act because Plaintiff has the residual functional capacity ("RFC") to perform work for which there exists a significant number of jobs in the national economy.  (*Id.*  at 23 & 40–41).  More specifically, the ALJ determined that Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: The claimant can never be exposed to unprotected heights or hazardous machinery.  He can have occasional contact with supervisors, co-workers, and the general public.  He is limited to performing only simple and routine tasks. He is able to wear shaded lenses during work hours.  Finally, he can perform work activity in no more than moderate noise environments.

(*Id.* at 30–31).  Relying on vocational expert testimony, the ALJ found that an individual with the above RFC could perform work as a (i) hand packager (70,000 jobs in the national economy); (ii) cleaner (40,000 jobs); and (iii) linen room attendant (5,000 jobs).  (*Id.* at 40).  On March 10, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  (*Id.*  at 1–7).

Plaintiff filed the instant appeal on May 11, 2021, which the court has subject-matter jurisdiction to decide under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (D.E. No. 1).  On November 8, 2021, Plaintiff filed a brief in support of the instant appeal.  (Mov. Br.).  The Commissioner opposed, and Plaintiff filed a reply.  (D.E. No. 13 ("Opp. Br."); D.E. No. 14 ("Reply")).

## II.    LEGAL STANDARD

### A.    Standard Governing Benefits

To qualify for either DIB or SSI, a claimant must show that he is "disabled" within the meaning of the Act.  42 U.S.C. §§ 423(a)(1)(E) & 1382(a)(1).  Disability is defined as the inability

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ."  *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920).  "The claimant bears the burden of proof for steps one, two, and four," and "[t]he Commissioner bears the burden of proof for the last step."  *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof."  *Id.* at 263 n.2.  If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends.  *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

***Step One***.  At step one, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i).  If an individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as age, education, and work experience.  20 C.F.R. §§ 404.1520(b) & 416.920(b).  If the plaintiff demonstrates he has not engaged in substantial gainful activity, the analysis proceeds to step two.

***Step Two***.  At step two, the claimant must show that his medically determinable

3

impairments or a combination of impairments were "severe."[2]  20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).  An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

**Step Three**.  At step three, the claimant may show, based on medical evidence, that his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings").[3]  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).  If the claimant makes such a showing, he is presumptively disabled and entitled to benefits.  If he does not make the showing, he proceeds to step four.

**Step Four**.  At step four, the claimant must show that he lacked the residual functional capacity ("RFC") to perform his past relevant work.[4]  20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the claimant lacked the RFC to perform his past relevant work, the analysis proceeds.  *See, e.g.*, *Plummer*, 186 F.3d at 428.

**Step Five**.  In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).  If the Commissioner shows that the claimant is able to perform jobs that exist

---

[2]     For DIB, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured ("DLI").  20 C.F.R. § 404.1520(a)(4)(ii).  SSI, on the other hand, "is a needs-based program, and eligibility is not limited based on an applicant's date last insured."  *Bosserman v. Berryhill*, No. 16-0091, 2017 WL 4833436, at *1 n.3 (M.D. Pa. Oct. 25, 2017).

[3]     For DIB, the claimant must make this showing as of the DLI.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).

[4]     For DIB, the claimant must make this showing as of the DLI.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

in significant numbers in the national economy, the claimant is not entitled to benefits. *See id.*

### B.    Standard of Review

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 360.

Importantly, the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

### III.    THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2017, the alleged onset date of Plaintiff's disability. (R. at 25).

At step two, the ALJ determined that Plaintiff had the following severe impairments:

bipolar disorder, anxiety disorder, and substance abuse disorder.  (*Id.*).  The ALJ further concluded that Plaintiff's obesity, hypertension, diabetes, migraine headaches, hepatitis C, and left ear hearing loss were non-severe impairments.  (*Id.* at 25–28).

At step three, the ALJ considered Listings 2.10 for hearing loss not treated with cochlear implantation; 12.04 for depressive, bipolar and related disorders; and 12.06 for anxiety and obsessive-compulsive disorders.  (*Id.*  at 28–30).  The ALJ ultimately determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed by the regulations.  (*Id.*).

At step four, the ALJ concluded that Plaintiff had the RFC to perform medium work, with certain exceptions.  (*Id.* at 30).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds; if someone can do medium work, that individual can also do sedentary and light work.  20 C.F.R. §§ 404.1567(c) & 416.967(c).  The ALJ found that Plaintiff could never be exposed to unprotected heights or hazardous machinery; could have occasional contact with supervisors, coworkers, and the general public; was limited to performing only simple and routine tasks; was able to wear shaded lenses during the workday; and could tolerate no more than moderate noise environments.  (R. at 30–31). Based on the record, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.* at 39).

Nevertheless, at step five, after considering Plaintiff's background, RFC, and vocational expert testimony, the ALJ found that there were jobs that existed in "significant numbers in the national economy" that Plaintiff could perform, including work as a (i) hand packager (70,000 jobs in the national economy); (ii) cleaner (40,000 jobs); and (iii) linen room attendant (5,000 jobs). (*Id.* at 40).  Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act.

(*Id.* at 41).

## IV.     DISCUSSION

Plaintiff challenges the ALJ's determination at steps three and four.  (Mov. Br. at 14–18).  The Court considers each challenge in turn.

### A.     Step Three

Plaintiff challenges the ALJ's determination at step three, arguing that the ALJ erred in finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 12.04 for depressive, bipolar, and related disorders.  (*Id.* at 14–17).  The Commissioner opposes, asserting that the ALJ reasonably found that Plaintiff's mental impairments did not satisfy the requirements of Listing 12.04 and that Plaintiff's challenge amounts to a request for the Court to reweigh the evidence.  (Opp. Br. at 8).  For the reasons set forth below, the Court agrees with the Commissioner.

A claimant is presumptively disabled under Listing 12.04 if he satisfies 12.04A and either 12.04B or 12.04C.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Without deciding whether Plaintiff satisfied 12.04A, the ALJ found that Plaintiff did not satisfy either 12.04B or 12.04C.  (R. at 28–30).  Plaintiff argues that contrary to the ALJ's finding, he satisfied the criteria in 12.04B.  (Mov. Br. at 15).  For the reasons set forth below, the Court concludes that the ALJ's finding that Plaintiff did not meet the requirements of 12.04B is supported by substantial evidence.

To satisfy 12.04B, the claimant must have one extreme limitation or two marked limitations in the following domains:

> (i) Understand, remember, or apply information;
> (ii) Interact with others;
> (iii) Concentrate, persist, or maintain pace; and
> (iv) Adapt or manage oneself.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  A limitation is "extreme" where a claimant is not able to

function independently, appropriately, effectively, and on a sustained basis.  *Id*.  A limitation is "marked" where a claimant's ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id*.  A limitation is "moderate" where the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is fair.  *Id*.  Where a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).  This means that Plaintiff must explain how he "might have prevailed at step three if the ALJ's analysis had been more thorough."  *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016).  And Plaintiff must "affirmatively point[ ] to specific evidence that demonstrates he should succeed at step three."  *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016).

The ALJ found that Plaintiff only had a "moderate" limitation in each of the 12.04B domains based on the following.  First, the ALJ found that Plaintiff had a "moderate limitation" in the domain of understanding, remembering, and applying information.  (R. at 29).  Although the ALJ acknowledged that Plaintiff had difficulty with memory, needed reminders to manage his personal needs, and could not perform certain concentration tests, the ALJ also found that Plaintiff remembered to take his medications, retained an ability to pay his bills and manage his finances, and could independently find his way around his community.  (*Id.*).  Second, while noting evidence that suggested Plaintiff was socially withdrawn and isolated, the ALJ determined that Plaintiff had only a "moderate limitation" in the domain of interacting with others based on evidence that suggested Plaintiff had friends, attended regular AA meetings, was able to go out in public by himself, and possessed adequate expressive and receptive language skills.  (*Id.*).  Third, for the domain of concentrating, persisting, or maintaining pace, the ALJ likewise found that Plaintiff had a "moderate limitation."  (*Id.*).  While the ALJ acknowledged that Plaintiff had difficulty focusing,

could not perform certain concentration tests, and reported suicidal ideation, the ALJ also found that Plaintiff's primary care physician, Dr. Fisher, consistently noted his normal attention span. (*Id.*).  The ALJ also discussed multiple of Plaintiff's mental status examinations, which indicated that Plaintiff did not have abnormal thought content such as delusions, paranoia, or psychosis. (*Id.*).  Fourth, when considering the domain of adapting or managing oneself, the ALJ found that Plaintiff had a "moderate limitation."  (*Id.*).  The ALJ noted that Plaintiff reported independent and generally unlimited activities of daily living.  (*Id.* at 30).  The ALJ also noted that Plaintiff's mental status examinations showed he had a pleasant and cooperative demeanor, his hygiene was fine, and his insight and judgment were fair.  (*Id.*).  Because Plaintiff's mental impairments did not create at least two "marked" limitations or one "extreme" limitation, the ALJ found that the 12.04B criteria were not satisfied.  (*Id.*).  The ALJ's finding that Plaintiff does not have an extreme limitation in one or a marked limitation in two of the domains in 12.04B is supported by substantial evidence.

Plaintiff's remaining arguments do not lead to a contrary conclusion.  He argues the ALJ (i) discounted abnormal findings in the medical evidence, (ii) ignored findings of Plaintiff's mental impairments, (iii) diminished evidence of Plaintiff's decompensation episodes, (iv) improperly found that Plaintiff's activities of daily living were not sufficiently disrupted, and (v) did not consider that Plaintiff may have structured his activities to minimize symptoms.  (Mov. Br. at 15–17; Reply at 1–2).  The Court considers each argument in turn.

*First*, Plaintiff argues that the ALJ's decision at step three was not supported by substantial evidence because the ALJ impermissibly discounted abnormal findings in the medical evidence and instead cherry-picked normal findings to support his conclusion.  (Mov. Br. at 15).  Specifically, Plaintiff contends that the ALJ ignored the findings of Plaintiff's treating primary

care physician Dr. Fisher, which indicated that the 12.04B criteria are met, and impermissibly substituted his lay opinion for that of Dr. Fisher's.  (*Id.* at 15–16).  The Commissioner opposes, arguing that the ALJ carefully considered Dr. Fisher's findings and reasonably determined they were not persuasive.  (Opp. Br. at 13).  For the following reasons, the Court agrees with the Commissioner.

As an initial matter, in raising a challenge at step three, a plaintiff must "affirmatively point[ ] to specific evidence that demonstrates he should succeed."  *Woodson*, 661 F. App'x at 766.  Plaintiff fails to explain how he might have satisfied the 12.04B criteria and succeeded at step three had the ALJ considered Dr. Fisher's opinion.  Plaintiff merely states that Dr. Fisher's January 2, 2020 report "demonstrated the marked and extreme limitations of the B criteria of Listing 12.04" without explaining which criteria are met or how.  (Reply at 1; *see also* Mov. Br. at 15).  Plaintiff thus fails to meet his burden of presenting specific evidence that he satisfied the 12.04B criteria such that the outcome would have been different if the ALJ had been more thorough.  *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005).  Nevertheless, as will be discussed below, the ALJ's step-three evaluation is supported by substantial evidence.

In evaluating the medical opinion evidence of record, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a) & 416.920c(a).  The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [ ] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . .  and consistency."  *Id*.  The regulations further require the ALJ to articulate his "consideration of medical opinions" and include in the "determination or decision how persuasive [he] find[s] all of

the medical opinions." *Tamya S. on behalf of L.S. v. Kijakazi*, No. 20-10035, 2021 WL 5757400, at *6 (D.N.J. Dec. 3, 2021).

The ALJ's explanation for not crediting Dr. Fisher's opinions satisfies these requirements. Although the ALJ did not discuss Dr. Fisher's findings at step three, the ALJ's decision as a whole allows the Court to conduct a meaningful review of the ALJ's consideration of Dr. Fisher's opinion. *See Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007); *see also Domkos v. Colvin*, No. 15-2660, 2016 WL 1732380, at *4 (D.N.J. May 2, 2016) (allowing an ALJ's analysis of relevant medical evidence in one step of a decision to support the ALJ's conclusion in another step). Specifically, the ALJ expressly acknowledged Dr. Fisher's findings that Plaintiff had no useful ability to understand, remember, and carry out detailed instructions, work in coordination with others, manage normal work stress, or complete a normal workday/workweek, and would be seriously limited in performing work at a consistent pace. (R. at 37). He also discussed Dr. Fisher's assessment that Plaintiff could not walk more than 10 blocks, stand for more than 10 minutes at a time, or sit for more than 30 minutes at a time. (*Id.*). However, after considering this evidence, the ALJ found Dr. Fisher's opinions to be "unsupported, medically inconsistent, and implicitly conclusory." (*Id.*).

To start, the ALJ noted that Dr. Fisher's evaluation of Plaintiff's physical limitations, which suggested that Plaintiff could not perform a full day of work, were medically inconsistent with Dr. Fisher's own treatment notes. (*Id.* at 38). For example, the ALJ noted that Dr. Fisher's treatment notes indicated that Plaintiff's primary medical concerns related to his mental impairments and that his hypertension, diabetes, obesity, hepatitis C and headaches were under "good control with prescription medications." (*Id.* at 25). Further, the ALJ found that Dr. Fisher's evaluation of Plaintiff's physical limitations was largely unsupported by any of Plaintiff's medical

records.  (*Id.* at 38; *see, e.g.*, *id.* at 26 ("His physical examinations showed normal musculoskeletal, neurological, cardiovascular, and respiratory function."); *id* at 27 ("The consultative examination showed his ability to perform a range of postural and exertional tasks.  He does not complain of any significant physical limitations and he concedes that bipolar disorder primarily causes his disability."); *id.* at 34 ("Physical examination showed he had no acute or chronic medical conditions to contraindicate any mental treatments.")).  As such, the ALJ's finding that Dr. Fisher's opinion regarding Plaintiff's physical limitations was unpersuasive is adequately explained in his decision and is supported by the record.  *See Breazeale v. Kijakazi*, No. 20-2184, 2022 WL 883852, at *12 (M.D. Pa. Mar. 24, 2022) (finding that "discrepancy between the treating source opinion and that source's treatment records was a valid consideration for the ALJ to take into account when assessing the persuasive power of th[o]se medical opinions").

Moreover, the ALJ found that Dr. Fisher's evaluation of Plaintiff's mental limitations, which showed that Plaintiff was unable to perform the mental demands of work, was not supported by other medical evidence in the record.  (*Id.* at 38).  On the one hand, the ALJ acknowledged Plaintiff's mental impairments, including his inability to perform certain concentration tests or simple arithmetic, as well as his social isolation and suicidal ideations.  (*Id.* at 29 & 34).  Nevertheless, the ALJ found that other medical evidence of record contradicted Dr. Fisher's findings and supported only moderate mental limitations.  For example, the ALJ considered Plaintiff's most recent examinations with Eileen Riley and Dr. Yasin, which demonstrated generally normal findings and indicated that Plaintiff's bipolar disorder and mental impairments have been generally stable and improving.  (*Id.* at 35 (noting that in February 2019 Plaintiff "advised that he was feeling more stable and less manic, particularly given the support he received from his wife and children.  He believed that his mania was controlled with his Lithium

prescription."); *see also id.* (noting that in his January 2020 examination "[Plaintiff] no longer needed to take Xanax.  His activities of daily living, relationships, and mood all improved.").  The ALJ also considered evidence which showed that Plaintiff's thought process was linear, his judgment and insight were fair, and he had no signs of delusions, paranoia, or psychosis, as well as reports of mental status examinations which indicated that Plaintiff exhibited a pleasant and cooperative demeanor and adequate expressive and receptive language skills.  (*Id.* at 29, 33 & 35).

Finally, the ALJ credited the findings of state agency reviewing psychologists Dr. Hodges and Dr. Tillman, who determined that Plaintiff did not satisfy Listing 12.04, because their observations were consistent with the totality of the evidence.  (*Id.* at 36 (noting that Dr. Hodges found Plaintiff to have only moderate limitations for (i) understanding, remembering and carrying out instructions; (ii) interacting with others; (iii) maintaining attention and concentration for extended periods, maintaining a regular schedule, and completing a normal workday/workweek; and (iv) adapting to changes in a work setting); *see also id.* (noting that Dr. Tillman found Plaintiff to have a marked limitation for understanding, remembering and carrying out detailed instructions, but otherwise agreed with Dr. Hodges).  The ALJ also found the opinion of Dr. Sabol persuasive, who performed a psychological consultative examination on Plaintiff in February of 2019.  (*Id.* at 36–37).  While noting that Plaintiff had problems with memory, Dr. Sabol also observed that Plaintiff could understand simple directions and carry out tasks independently.  (*Id.* at 36).  As such, the ALJ found that Dr. Sabol's "personal observations [we]re medically consistent with the outpatient treatment notes and primary care physician notes, which generally show normal physical and mental findings."  (*Id.* at 37).  Finally, the ALJ considered other record evidence which indicated that Plaintiff retained the ability to pay his bills, manage his finances, and independently find his way around his community.  (*Id.* at 29).  Because Dr. Fisher offered no

explanation to demonstrate why his conclusory findings differed "so drastically from the totality of objective findings in the record," the ALJ found Dr. Fisher's findings unpersuasive. (*Id.* at 38).

In sum, the ALJ's explanations for discounting the findings of Dr. Fisher are sufficient. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). The ALJ expressly considered the opinions offered by Dr. Fisher, as well as Plaintiff's records, outpatient mental health treatment notes, recent psychiatric evaluations, and the findings of state agency psychologists and weighed the evidence accordingly. (R. at 37–38); *Joseph M. v. Kijakazi*, No. 21-2771, 2022 WL 17324538, at * 15 (D.N.J. Nov. 29, 2022) (finding that the ALJ did not cherry-pick evidence when he expressly considered evidence that Plaintiff claimed he ignored). As such, the Court finds that the ALJ did not err at step three by discounting Dr. Fisher's opinion.[5] *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (stating that the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied.").

*Second*, Plaintiff suggests that the ALJ ignored findings of Plaintiff's mental impairments, including Plaintiff's high PHQ-9 score, which is a reliable measure of depression severity, and high GAD-7 score, which is a reliable measure of anxiety severity, when reaching his conclusion at step three. (Reply at 2). To start, Plaintiff again fails to explain how he might have satisfied Listing 12.04B and prevailed at step three had the ALJ considered Plaintiff's PHQ-9 and GAD-7 scores. *See Woodson*, 661 F. App'x at 766. As such, Plaintiff fails to meet his burden of presenting specific evidence that he satisfied the 12.04B criteria such that the outcome would have been different if the ALJ had been more thorough. *Williams*, 156 F. App'x at 505. Nevertheless, the

---

[5]     To the extent Plaintiff argues that the ALJ's findings regarding the medical evidence of record are illogical or demonstrate a misunderstanding of Plaintiff's condition (Reply at 1), he essentially asks the Court to reweigh evidence that the ALJ specifically considered and accord it less weight, which the Court cannot do. *See Williams*, 970 F.2d at 1182.

14

ALJ's step-three evaluation is supported by substantial evidence.  An ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Here, though the ALJ did not specifically cite to Plaintiff's PHQ-9 and GAD-7 scores, the ALJ did consider evidence of Plaintiff's depression and anxiety.  (*See, e.g.,* R. at 33).  For example, in finding that Plaintiff had a moderate limitation for adapting or managing oneself and concentrating, persisting, or maintaining pace, the ALJ expressly considered evidence which indicated that Plaintiff reported suicidal ideation and suffered from psychological distress and depression.  (*Id.* at 29–30).  Nevertheless, the ALJ found only "moderate" limitations in these domains because he also considered multiple mental status examinations, which indicated that Plaintiff had a pleasant and cooperative demeanor, fair insight and judgment, and did not have abnormal thought content such as delusions, paranoia, or psychosis.  (*Id.*).  The ALJ further considered reports from Plaintiff's primary care physician which consistently noted Plaintiff's normal attention span.  (*Id.* at 29).  The ALJ also considered Plaintiff's anxiety and depression elsewhere in his opinion, including mental status examinations that revealed Plaintiff's "depressed, anxious, frightened, hopeless, and subdued mood."  (*Id.* at 33).  However, as described above, the ALJ also assessed Plaintiff's outpatient treatment notes, and recent mental status examinations, which indicated that Plaintiff's thought process was linear and mental impairments have been generally stable and improving.  (*Id.* at 29, 33 & 35).  Accordingly, the Court cannot say that the ALJ ignored evidence of Plaintiff's anxiety and depression.  Rather, he weighed that evidence with other findings in the record.  Thus, his opinion was supported by substantial evidence.  *Johnson*, 497 F. App'x at 201.

*Third*, Plaintiff argues that the ALJ erred in his step three analysis by diminishing evidence of Plaintiff's decompensation episodes when stating they "resulted in very short-term psychiatric hospitalizations" and by failing to take into account Plaintiff's chronic problems with suicidal ideation and aggressive behavior. (Mov. Br. at 16 (quoting R. at 38)). Specifically, Plaintiff claims that the ALJ failed to take into account that the "[r]ecurrence or worsening of symptoms and signs . . . can interfere enough to render [the claimant] unable to sustain work." (*Id.* (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(4)(b))). The Commissioner opposes, arguing that the ALJ properly determined that, other than brief periods of increased treatment, Plaintiff only attended periodic medical appointments. (Opp. Br. at 17). Accordingly, the Commissioner contends that to the extent Plaintiff summarizes evidence he believes supports a step three finding in his favor, his argument does not invalidate the ALJ's fact-finding which is supported by substantial evidence. (*Id.* at 14). The Court agrees with the Commissioner. To start, Plaintiff again fails to explain how he might have satisfied Listing 12.04B and prevailed at step three had the ALJ considered that the recurrence or worsening of symptoms and signs can interfere enough to render Plaintiff unable to sustain work. *Woodson*, 661 F. App'x at 766. As such, Plaintiff fails to meet his burden of presenting specific evidence that he satisfied the 12.04B criteria such that the outcome would have been different if the ALJ had been more thorough. *Williams*, 156 F. App'x at 505. Nevertheless, the ALJ's decision was based on substantial evidence. When there is evidence of fluctuation in a claimant's condition, the regulations require the Commissioner to consider that evidence. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(4)(a); *id.* § 12.00F(4)(b). Here, after considering the record as a whole, the ALJ adequately addressed evidence of exacerbation periods. For example, after noting Plaintiff's inpatient psychiatric admissions during 2017 and 2018 as well as his participation in an outpatient partial hospitalization program the ALJ discussed that these episodes

16

of decompensation resulted in very short-term hospitalizations.  (*See, e.g., id.* at 33–34 (noting that Plaintiff's two inpatient psychiatric admissions during the relevant period lasted for a few days (*i.e.*, from July 8, 2017 through July 12, 2017 and from December 24, 2018 to December 25, 2018); *id.* at 35 (noting that Plaintiff participated in an outpatient partial hospitalization program for less than one month)).[6]  The ALJ also considered evidence which indicated that Plaintiff experienced feelings of suicidal ideation, but found that, nonetheless, Plaintiff had no more than moderate signs of mental limitations in light of evidence that Plaintiff's psychiatric examinations were stable and improving.  (*Id.* at 29–30 & 38).  For example, the ALJ found only moderate limitations in adapting or managing oneself and concentrating, persisting or maintaining pace because of Plaintiff's mental status examinations, which indicated that Plaintiff had fair insight and judgment, and did not have abnormal thought content.  (*Id.* at 29–30).  Likewise, the ALJ only found "moderate" limitations in understanding, remembering, or applying information and interacting with others based on evidence indicating that Plaintiff could manage his own finances and independently find his way around his community.  (*Id.* at 29).  Accordingly, the ALJ did not argue away Plaintiff's episodes of decompensation or evidence of his suicidal ideation, but rather considered those findings in light of the other evidence of record.  "Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  And the ALJ's analysis here is supported by substantial evidence.

*Fourth*, Plaintiff argues that the ALJ erred at step three because he improperly found that Plaintiff's activities of daily living were not sufficiently disrupted because he was able to assist his

---

[6]     The Court notes that though Plaintiff raises this argument regarding the ALJ's findings at *step three*, the ALJ considered this evidence at *step four*.  (R. at 38).  Because an ALJ's decision is to be read as a whole, the Court considers Plaintiff's argument accordingly.  *See Cop*, 226 F. App'x at 208.

wife and mother-in-law with their activities of daily living.  (Mov. Br. at 16).  According to Plaintiff, this finding was not in line with the regulations which provide that "[the] ability to complete tasks in settings . . . that are less demanding or more supportive than typical work settings does not necessarily demonstrate [the] ability to complete tasks in the context of regular employment." (*Id.* (quoting 20 C.F.R. § Pt. 404 Subpt. P, App. 1 § 12.00(C)(6)(b))).  The Court disagrees.  As before, Plaintiff fails to explain how he might have satisfied Listing 12.04B and prevailed at step three had the ALJ considered this regulation.  *Woodson*, 661 F. App'x at 766.  In any event, the ALJ's decision was based on substantial evidence.[7]  In finding that Plaintiff exhibited only moderate signs of mental limitations and only mild physical limitations, the ALJ noted that Plaintiff's "activities of daily living are not sufficiently disrupted." (R. at 38).  The ALJ noted that Plaintiff "was able to engage in some work activity since his alleged onset date, including working just below the threshold of substantial gainful activity in the 3rd quarter of 2017" and "made earnings in 2018 and 2019 as well." (*Id.*).  The ALJ acknowledged that Plaintiff "was afforded significant accommodations that allowed him to perform [this] work activity." (*Id.* at 25).  Nevertheless, in finding that Plaintiff only had a "moderate" limitation for adapting or managing oneself and understanding, remembering or applying information, the ALJ considered evidence that Plaintiff was able to go out in public on his own, reported generally unlimited activities of daily living, could pay his bills, and manage his own finances.  (*Id.* at 29–30).  Further, elsewhere in his opinion, the ALJ also considered other evidence which showed that Plaintiff could care for his dog and mother, and independently care for his personal needs (*id.* at 32 & 38), as well

---

[7]     The Court notes that though Plaintiff argues that this mistake rendered the ALJ's findings at step three improper, the ALJ's finding that Plaintiff's activities of daily living were not sufficiently disrupted was made at step four.  (R. at 38).  Nonetheless, an ALJ's decision is to be read as a whole, and because Plaintiff raises this argument as to step three, the Court will consider it accordingly.  *See Cop*, 226 F. App'x at 208.

as recent mental status examinations which indicated that Plaintiff's bipolar disorder and mental impairments have been generally stable.  (*Id.* at 33 & 35).  Considering all of this evidence, the ALJ concluded that Plaintiff's activities of daily living were not sufficiently disrupted, and the Court may not, contrary to Plaintiff's argument, "re-weigh the evidence."  *Nieves v. Comm'r of Soc. Sec.*, No. 20-2590, 2021 WL 2682629, at *2 (D.N.J. June 30, 2021).

*Fifth*, Plaintiff argues that the ALJ erred at step three when he found that Plaintiff's "most recent psychiatric examinations in evidence demonstrated generally normal findings."  (Mov. Br. at 17).  According to Plaintiff, the ALJ did not consider that Plaintiff "may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms."  (*Id.* (quoting Social Security Ruling 16-3p)). However, the ALJ's decision belies this argument.  As explained above, the ALJ expressly considered the variability of Plaintiff's symptoms and his ability to perform daily activities across the relevant period.  The ALJ specifically acknowledged that though Plaintiff had previously attended AA meetings for his substance abuse, he testified that he no longer goes.  (*Id.* at 32).  The ALJ also considered reports which indicated Plaintiff was socially isolated and the third-party statement of Plaintiff's son who described the variability in his father's mental status.  (*Id.* at 29 & 32).  Nevertheless, in finding that Plaintiff had only a "moderate" limitation in interacting with others and adapting or managing oneself, the ALJ also noted that Plaintiff has friends, is able to independently leave the apartment and go out into public by himself, reported independent activities of daily living, and previously attended AA meetings three to four times per week.  (*Id.* at 29–30).  And the ALJ considered Plaintiff's mental status examinations, which were stable and improving (*id.* at 33 & 35) in the context of those findings.  As such, the Court cannot say that the ALJ failed to consider that Plaintiff may have structured his activities to minimize his symptoms.

Rather, the ALJ's analysis was supported by substantial evidence.

**B.      Step Four**

Plaintiff next challenges the ALJ's determination at step four, where he found that Plaintiff

had the RFC to perform medium work, with certain exceptions.  (*Id.* at 30).  Plaintiff argues that

the ALJ failed to consider evidence that Plaintiff's RFC was more limited than the RFC arrived at

by the ALJ and that Plaintiff would need significant absences and time off-task at work.  (Mov.

Br. at 18).  In particular, Plaintiff contends that his psychiatric hospitalizations and participation

in the acute partial hospitalization program which required attendance three to five days per week

for five to six hours per day, indicated that Plaintiff would need significant absences and time off-

task.  (*Id.*).  Plaintiff contends that this error is harmful because the vocational expert did not

consider Plaintiff's need for significant absences and time off-task when determining whether jobs

exist in the national economy for an individual with the claimant's age, education, work

experiences, and RFC.  (*Id.*).  The Commissioner opposes, asserting that the ALJ's RFC finding

captured all of Plaintiff's functional limitations by limiting him "to only simple and routine tasks

with occasional contact with supervisors, coworkers, and the public."  (Opp. Br. at 15 (citing R.

30–31)).  For the following reasons, the Court agrees with the Commissioner.

A plaintiff's RFC is the most that a plaintiff can do despite his limitations.  20 C.F.R. §§

404.1545(a) & 416.945(a).  When making an RFC determination, an ALJ is required to consider

all evidence before him. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

An ALJ need not "use particular language or adhere to a particular format in conducting his

analysis," as long as "there is sufficient development of the record and explanation of findings to

permit meaningful review." *Jones*, 364 F.3d at 505.

In making his RFC determination, the ALJ expressly considered Plaintiff's psychiatric

hospitalizations and participation in the acute partial hospitalization program.  (R. at 33–35).

Ultimately, the ALJ determined that the evidence showed no more than moderate signs of mental

limitations and only mild physical limitations, because Plaintiff's psychiatric admissions "resulted

in very short-term hospitalizations." (*Id.* at 38).  As explained above, the ALJ noted that Plaintiff's

inpatient psychiatric admissions during the relevant period lasted for only a few days (*i.e.*, from

July 8, 2017 through July 12, 2017 and from December 24, 2018 to December 25, 2018).  (*Id.* at

33–34).  Likewise, the ALJ discussed that Plaintiff's participation in an outpatient partial

hospitalization program was for less than one month, after which he demonstrated a "significant

decrease in his symptoms of depression and anxiety." (*Id.* at 35).

Plaintiff responds by pointing out that even brief exacerbations could prevent Plaintiff from

consistently performing a full-time job and that the ALJ failed to take into account that the

"[r]ecurrence or worsening of symptoms and signs . . . can interfere enough to render [the claimant]

unable to sustain work." (Reply at 3 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(4)(b))).

However, the ALJ considered evidence regarding Plaintiff's hospitalizations in light of other

evidence of record, which indicated that Plaintiff did not require significant absences or time off-

task.  For example, despite brief episodes of decompensation, the ALJ discussed that Plaintiff

generally only required outpatient treatments or psychiatric consultations to evaluate his mental

status and adjust his medications and otherwise attended regular AA meetings.  (R. at 33–35).

Likewise, the ALJ relied on evidence which indicated Plaintiff's ability to independently engage

in daily activities and care for his own personal needs.  (*Id.* at 31–33).  The ALJ further relied on

the opinions of Dr. Hodges and Dr. Tillman, which acknowledged Plaintiff's hospitalizations and

found that Plaintiff had moderate limitations for work activity.  (*See, e.g., id.* at 36–37).  Further,

the ALJ considered record evidence which consistently indicated that Plaintiff did not exhibit

abnormal thought content, including delusions or psychosis. (*Id.* at 33 & 35). Next, as discussed above, the ALJ relied on evidence regarding recent mental status examinations which indicated that Plaintiff's bipolar disorder and mental impairments have been generally stable and improving. (*Id.* at 35). Finally, though Dr. Fisher stated that Plaintiff would need to miss more than four days of work per month, the ALJ adequately described why he did not find Dr. Fisher's evaluation persuasive, as described above. (*Id.* at 37–38). After weighing the totality of this evidence, the ALJ reached an RFC determination that did not include a requirement for significant absences or time off-task. At best, Plaintiff expresses disagreement with the ALJ's decision. But disagreement is not a basis to disturb an ALJ's decision, which here is supported by substantial evidence. *See Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 688 (3d Cir. 2020).

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner. An appropriate Order accompanies this Opinion.

Dated: February 9, 2023

**Hon. Esther Salas, U.S.D.J.**